IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ALVIN KNOX, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 09-1340 |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) | Magistrate Judge Lisa Pupo Lenihan |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

I. **Introduction**

This matter comes before the Court on the parties' cross-motions for summary judgment, which have been filed pursuant to Federal Rule of Civil Procedure 56. Doc. Nos. 10 & 14. The Court has jurisdiction in this case pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the standards applicable under 42 U.S.C. § 405(g). For the reasons that follow, the motion for summary judgment filed by the Plaintiff (*Document No. 10*) will be denied, the motion for summary judgment filed by the Defendant (*Document No. 14*) will be granted, and the administrative decision of the Commissioner of Social Security ("Commissioner") will be affirmed.

II. **Procedural History**

Plaintiff Alvin Knox, Jr. ("Knox"), protectively applied for supplemental security income benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f] on March 27, 2007, alleging disability as of January 25, 2006. R. at 65, 87. The application was administratively denied on August 14, 2007. R. at 55. Knox responded on September 19, 2007,

1

by filing a timely request for an administrative hearing. R. at 60-62. On February 23, 2009, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge William E. Kenworthy (the "ALJ"). R. at 16. Knox, who was represented by counsel, appeared and testified at the hearing. R. at 19-24, 29-30. Samuel Edelman ("Edelman"), an impartial vocational expert, also testified at the hearing. R. at 25-28. In a decision dated March 11, 2009, the ALJ determined that Knox was not "disabled" within the meaning of the Act. R. at 5-15. The Appeals Council denied Knox's request for review on July 28, 2009, thereby making the ALJ's decision the final decision of the Commissioner this case. R. at 1. Knox commenced this action on October 2, 2009, seeking judicial review of the Commissioner's decision. Doc. Nos. 1 & 3. In accordance with 28 U.S.C. § 636(c)(1), the parties consented to having this case adjudicated by a United States Magistrate Judge. Doc. Nos. 7 & 9. Knox and the Commissioner filed motions for summary judgment on May 14, 2010, and July 14, 2010, respectively. Doc. Nos. 10 & 14. These motions are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

2

conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate

3

explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

### IV. **The ALJ's Decision**

In his decision, the ALJ determined that Knox had not engaged in substantial gainful activity subsequent to his application date. R. at 10. Knox was found to be suffering from the "residual effects of a gunshot wound to the buttocks, including a bullet fragment lodged near the fovea of the left humeral head." R. at 10. This impairment was deemed to be "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii). R. at 10. Although Knox was also found to be suffering from post-traumatic stress disorder, the ALJ determined that this impairment was not "severe." R. at 10-11. The ALJ concluded that Knox's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing

5

of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing").[1]
R. at 11-12.

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Knox's residual functional capacity as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant should have a sit/stand option at intervals of about 15 minutes. Moreover, he is limited to the performance of tasks of a simple, repetitive nature.

R. at 12. The fourth step of the sequential evaluation process was resolved in Knox's favor, since it was determined that his prior work activities did not constitute "past relevant work" under the Commissioner's regulations.[2] R. at 13.

Knox was born on March 18, 1988, making him nineteen years old as of the date of his application and twenty years old as of the date of the ALJ's decision. R. at 14, 65. He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). He had the equivalent of a high school education and an ability to communicate in English. R. at 14, 91, 144; 20 C.F.R. § 416.964. Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Knox could work as a hand packer, sorter/grader or bench assembler. R. at 14. Edelman's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[3] R. at 25-26.

---

[1] Because Knox does not raise the issue, the Court has no occasion to consider whether the ALJ's abbreviated analysis at the third step of the sequential evaluation process was sufficient to satisfy the requirements of *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-120 (3d Cir. 2000). R. at 11-12.

[2] In order for a claimant's prior work experience to constitute "past relevant work," it must have constituted "substantial gainful activity" under the Commissioner's regulations. 20 C.F.R. § 416.960(b)(1).

[3] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can

6

## V. Discussion

Knox's alleged onset date of January 25, 2006, coincides with the date on which he was shot in the buttocks during the course of an armed robbery. R. at 85, 159. In the immediate aftermath of the shooting, Knox underwent "an exploratory laparotomy with resection of small bowel enterotomies and a diverting colostomy." R. at 121. A "takedown" of the colostomy was performed on June 19, 2006. R. at 118, 121-122, 124-125. A bullet remained lodged in Knox's left hip. R. at 139-140, 146. Between December 15, 2006, and February 18, 2007, Knox delivered pizza for Papa John's. R. at 20, 93. He was forced to leave that job because of pain attributable to his injuries. R. at 20, 92.

On June 18, 2007, Dr. Aiysha Chatha performed a consultative physical examination of Knox in connection with his application for SSI benefits. R. at 143-151. Based on her examination, Dr. Chatha reported that Knox could occasionally lift or carry objects weighing up to ten pounds, but that he could never lift or carry objects weighing more than ten pounds. R. at 146, 150. She indicated that he could stand or walk for only one hour during the course of an eight-hour workday, but that he could sit for a full eight hours if given the opportunity to sit or stand at his option. R. at 146, 150. Dr. Chatha opined that Knox needed to use a cane for "ambulation" but not for "balancing." R. at 150. She asserted that Knox could "never" climb, and that he was limited to only "occasional" bending, kneeling, stooping and crouching. R. at 146, 151. Nevertheless, she believed Knox to be capable of balancing on a "frequent" basis. R. at 146, 151. Knox was deemed to be limited in his abilities to push and pull with his lower

---

perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

7

extremities. R. at 146, 150. Dr. Chatha also recommended that Knox avoid heights and dust. R. at 151. Mary Dimartino ("Dimartino"), a non-examining medical consultant, opined on August 10, 2007, that Knox was physically capable of performing a full range of "light" work.[4] R. at 152-157.

Knox's mental condition began to deteriorate during the spring of 2008. On March 7, 2008, he was voluntarily admitted to the University of Pittsburgh Medical Center's Western Psychiatric Institute and Clinic ("Western Psych") for inpatient treatment pursuant to 50 PA. STAT. § 7201.[5] R. at 173-174. At the time of his admission, Knox reported that he had experienced suicidal ideation. R. at 159. Although he did not know the identities of the four individuals who had attacked him on January 25, 2006, Knox exhibited homicidal ideation in relation to them. R. at 159. He expressed a desire to kill people who had unjustifiably injured others if he could not locate the specific individuals who had injured him. R. at 169. It was determined that Knox was suffering from major depression and post-traumatic stress disorder. R. at 174. He was given a prescription for Prozac. R. at 163. Knox was apparently discharged on March 10, 2008, after giving notice of his intention to leave Western Psych against medical advice.[6] R. at 159, 166. The ALJ found this to be a non-severe impairment and his determination is not questioned by Knox in his motion.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).
[5] Pennsylvania law permits an individual who has attained the age of fourteen to voluntarily admit himself or herself for inpatient psychiatric treatment. 50 PA. STAT. § 7201.
[6] Under Pennsylvania law, a voluntary psychiatric patient may withdraw from inpatient treatment immediately unless he or she has previously agreed, at the time of admission, to remain in treatment for a specified period of time (not exceeding seventy-two hours) after giving notice of his or her intent to withdraw from treatment. 50 PA. STAT. § 7206(a). The record indicates that Knox gave notice of his intent to withdraw from inpatient treatment, and that he was discharged on March 10, 2008, against medical advice. R. at 159, 166. It is not clear whether he was

Knox continued to experience pain in his left hip. His treating physician, Dr. Alan J. Barnett, provided him with prescriptions for Percocet. R. at 179-186. In a type-written note dated June 4, 2008, Dr. Barnett stated that Knox was "unable to work" due to chronic hip pain, and that he was expected to take "controlled narcotic analgesics up to four times per day. R. at 187. According to Dr. Barnett, Knox was incapable of working on a full- or part-time basis. R. at 187. [7]

In response to a question posed by Knox's attorney, Edelman testified that the jobs which he had identified on the basis of the ALJ's hypothetical question could not be performed by an individual who needed to use a cane while standing. R. at 26-27. He declared that somebody who needed to use a cane only for ambulation would be able to perform such jobs. R. at 26. During the course of this colloquy, the ALJ pointed out that Dr. Chatha had checked the box next to the word "ambulation," but not the box next to the word "balance," on the "medical source statement" form submitted in connection with her examination report. R. at 150. R. at 27, 150.

In his decision, the ALJ observed that Dr. Barnett's opinion of disability had been "purely conclusory," and that it had been rendered "without any supporting explanation or rationale." R. at 13. The ALJ accorded "[s]ubstantial weight" to Dr. Chatha's examination report, finding it to be indicative of Knox's true capacity. R. at 13. Consequently, it was determined that Knox could perform a limited range of "sedentary" work.[8] R. at 12-13. Relying on Dr. Chatha's

---

discharged immediately after providing notice of his intent to withdraw from inpatient treatment, or whether his discharge was effectuated pursuant to a notice that had been filed at an earlier time.
[7] This was the extent of Dr. Barnett's opinion as to disability.
[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain

examination report, the ALJ noted that while Knox needed a cane to ambulate, there was no indication that he needed a cane to stand. R. at 13.

In support of his motion for summary judgment, Knox argues that the ALJ erred in crediting Dr. Chatha's examination report rather than Dr. Barnett's opinion of disability. Doc. No. 11 at 3-4. This argument is without merit. The ultimate question of disability is reserved for the Commissioner's determination. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990); 20 C.F.R. § 416.927(e)(1). A conclusory statement by a treating physician indicating that his or her patient is statutorily "disabled" is not entitled to significant weight in the absence of evidence that the physician has vocational expertise. *Willis v. Baxter International, Inc.*, 175 F.Supp.2d 819, 832 (W.D.N.C. 2001). Furthermore, it was the prerogative of the ALJ "to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). It is axiomatic that a well-supported residual functional capacity assessment provided by a consultative medical examiner can constitute "substantial evidence" of a claimant's ability to work, even where that assessment is directly contradicted by a report supplied by the claimant's treating physician.[9] *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)(observing that "one medical report by an examining physician may constitute substantial evidence of a claimant's physical condition"); *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)(remarking that a consultative medical examiner "may bring both impartiality and expertise" to the adjudicatory process, whereas a treating physician "may too quickly find disability"). Where conflicting medical evidence is presented, it is emphatically the

---

amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

[9] This is not a case in which the opinion of a treating physician has been rejected solely on the basis of a contrary assessment provided by a non-examining medical consultant. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008).

province of the Commissioner to resolve that conflict. *Lambertson v. Astrue*, 625 F.Supp.2d 160, 175-177 (D.Del. 2009). In this context, a reviewing court has no mandate to re-weigh the evidence contained in the record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D.Pa. 1998).

Knox also argues that the ALJ mischaracterized Dr. Chatha's examination findings. He contends that Dr. Chatha believed him to be in need of a cane not only while *ambulating*, but also while *standing*. Doc. No. 11 at 5. This distinction is certainly important, since Edelman stated that an individual who could not *stand* without the support of a cane would be unable to perform tasks associated with the jobs identified in his testimony. R. at 26-27. Knox's argument, however, is simply not consistent with the documentary record of Dr. Chatha's consultative examination. Dr. Chatha unambiguously reported that Knox needed to use a cane for "ambulation" but not for "balance." R. at 150. She specifically determined that Knox could engage in "frequent" balancing.[10] R. at 146, 151. Knox assails the portion of the ALJ's analysis implying that a sit/stand option would adequately address the subjective complaints of pain discussed at the hearing. Doc. No. 11 at 6; R. at 13. Nonetheless, Dr. Chatha clearly stated that Knox would have "no problem" with sitting for the duration of an eight-hour workday, provided that he was afforded the opportunity to alternate between sitting and standing at his option. R. at 146. There is simply no factual basis for Knox's argument concerning the ALJ's alleged

---

[10] Knox does not argue that the ALJ erred in failing to account for the postural and environmental limitations identified by Dr. Chatha in his residual functional capacity assessment and corresponding hypothetical question to Edelman. Doc. No. 11 at 3-7; R. at 12, 25, 151. Therefore, the Court has no occasion to consider whether this failure on the part of the ALJ would have warranted a remand if it had been specifically raised by Knox in this proceeding. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). In any event, sedentary jobs of the kind referenced by Edelman rarely require an individual to engage in activities that would be incompatible with the postural and environmental limitations identified by Dr. Chatha, thereby rendering the ALJ's omission of these limitations harmless. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

mischaracterization of the record.  The Court has no basis for questioning or disturbing the ALJ's accurate interpretation of Dr. Chatha's examination findings.

**VI.**	**Conclusion**

Because the ALJ's residual functional capacity assessment was based on the report of a physical examination performed by a competent physician, his decision is "supported by substantial evidence." 42 U.S.C. § 405(g).  Accordingly, the motion for summary judgment filed by Knox will be denied, the motion for summary judgment filed by the Commissioner will be granted, and the decision of the Commissioner will be affirmed.

**VII.**	**Order**

AND NOW, this 13th day of October, 2010, it is hereby **ORDERED** that the Plaintiff's Motion for Summary Judgment (*Document No. 10*) is **DENIED**, and that the Defendant's Motion for Summary Judgment (*Document No. 14*) is **GRANTED**.  In accordance with 42 U.S.C. §§ 405(g) and 1383(c)(3), the administrative decision of the Commissioner of Social Security is hereby **AFFIRMED**.

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc:	All counsel of record